IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


MOMTAZI FAMILY, LLC,                    3:19-cv-00476-BR

          Plaintiff,                    OPINION AND ORDER

v.

MARY E. WAGNER; RICHARD
WAGNER; STEVEN R. WAGNER; and
YAMHILL NATURALS, LLC,

          Defendants.


RACHEL E. MCCART
Preserve Legal Solutions, P.C.
38954 Proctor Blvd., Ste. 186
Sandy, OR 97055
(844) 468-2388

          Attorneys for Plaintiff

ALLISON C. BIZZANO
MATTHEW A. GOLDBERG
Lotus Law Group
5200 SW Macadam Ave., Ste. 500
Portland, OR 97239
(503)606-8930

          Attorneys for Defendants


BROWN, Senior Judge.

     This matter comes before the Court on the Motion (#9) to

Dismiss with Prejudice filed by Defendants Mary E. Wagner,

Richard Wagner, Steven R. Wagner, and Yamhill Naturals, LLC.

1 - OPINION AND ORDER

The Court concludes the record is sufficiently developed, and, therefore, oral argument is not necessary to resolve Defendants' Motion.

For the reasons that follow, the Court **DENIES** Defendants' Motion.

## BACKGROUND

On April 2, 2019, Plaintiff Momtazi Family, LLC, filed a Complaint against Defendants for violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962.  The following facts are taken from Plaintiff's Complaint and the pleadings filed by the parties.

Plaintiff is an Oregon limited liability company that operated the Momtazi Vineyard, a certified biodynamic vineyard, on property in McMinnville, Oregon (the Momtazi property).  From 2016 through 2018 Plaintiff grew grapes on the property and sold the grapes to other wine producers including Maysara Winery, which Plaintiff also owns.  On August 1, 2018, Plaintiff began leasing the Momtazi property to Maysara, which now operates the vineyard.

On December 19, 2016, Defendants Mary and Steven Wagner, husband and wife, purchased real property adjacent to the Momtazi property.  In January 2017 Defendant Richard Wagner, the son of Mary and Steven, moved onto the Wagner property.

2 - OPINION AND ORDER

Plaintiff alleges Defendants invested in the development of the Wagner property to produce and to process marijuana, built structures and installed fixtures for the production of marijuana, and moved large amounts of soil to the Wagner property to form terraces in order to increase the size of the outdoor marijuana-grow area.  Plaintiff alleges Defendants market or intend to market the marijuana grown on their property under the brand name "Yamhill Naturals."  Although Richard Wagner directs the operations of Defendant Yamhill Naturals, Plaintiff alleges each Defendant will receive a portion of the proceeds of the marijuana operation.

According to Plaintiff, one of its customers cancelled an order for six tons of grapes grown on Plaintiff's property because of the marijuana operation on Defendants' property. Plaintiff alleges the customer cancelled the order because it contained grapes grown on the section of the Momtazi property adjacent to Defendants' property.  The customer believed the smell created by the marijuana contaminated the grapes and would affect the wine made from those grapes.  Plaintiff alleges it now is unable to sell grapes grown on its property next to Defendants' property.

Plaintiff also alleges the terracing on Defendants' property caused large amounts of dirt to flow downhill into one of the fish-stocked reservoirs located on Plaintiff's property.

3 - OPINION AND ORDER

Plaintiff contends this created a hazard to the fish and wildlife that form "an essential part of Plaintiff's biodynamic operation."  Plaintiff also contends Defendants or their agents trespassed onto Plaintiff's property, killed a calf, and amputated part of another cow's tail.

In summary, Plaintiff alleges the marijuana operation on Defendants' property has "directly and materially diminished the Momtazi property's fair market value," decreased the "marketability of grapes grown on that vineyard property," and decreased the rental income of the property.

## STANDARDS

### I.   Motion to Dismiss for Lack of Subject-Matter Jurisdiction Pursuant to Federal Rule of Civil Procedure 12(b)(1)

"[F]ederal courts are limited to deciding 'cases' and 'controversies.'"  *Bova v. City of Medford*, 564 F.3d 1093, 1095 (9th Cir. 2009)(quoting United States Const. Art. III, § 2).  "Two components of the Article III case or controversy requirement are standing and ripeness."  *Id.* at 1096 (citing *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009)).  A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) tests the subject-matter jurisdiction of a federal court.

To satisfy the standing requirement of Article III, a plaintiff must show "'an injury in fact'; 'a causal connection between the injury and the conduct complained of' and a conclusion that it is 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Arizona Christian Sch. Tuition Org'n v. Winn*, 131 S. Ct. 1426, 1437 (2011)(quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). *See also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). *See also Renee v. Duncan*, 623 F.3d 787, 801 (9th Cir. 2010).

The plaintiff must also establish standing for each form of relief sought. *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc. (TOC)*, 528 U.S. 167, 185 (2000). *See also Mayfield v. U.S.*, 599 F.3d 964, 969 (9th Cir. 2010). The "elements of standing must be supported in the same way as any other matter for which a plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Gest v. Bradbury*, 433 F.3d 1177, 1181 (9th Cir. 2006). General factual allegations of injury resulting from the alleged wrongful conduct may suffice at the pleading stage. *Id.*

## II.  Motion to Dismiss for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Twombly*, 550 U.S. at 546).  When a complaint is based on facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).  *See also Bell Atlantic*, 550 U.S. at 555-56.  The court must accept as true the allegations in the complaint and construe them in favor of the plaintiff. *Din v. Kerry*, 718 F.3d 856, 859 (9th Cir. 2013).

The pleading standard under Federal Rule of Civil

Procedure 8 "does not require 'detailed factual allegations,'
but it demands more than an unadorned, the-defendant-unlawfully-
harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,
550 U.S. at 555).  *See also* Federal Rule of Civil Procedure
8(a)(2).  "A pleading that offers 'labels and conclusions' or 'a
formulaic recitation of the elements of a cause of action will
not do.'"  *Id.* (citing *Twombly*, 550 U.S. at 555).  A complaint
also does not suffice if it tenders "naked assertion[s]" devoid
of "further factual enhancement."  *Id.* at 557.

     "In ruling on a 12(b)(6) motion, a court may generally
consider only allegations in the pleadings, exhibits attached to
the complaint, and matters properly subject to judicial notice."
*Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)(citing
*Jacobson v. Schwarzenegger,* 357 F. Supp. 2d 1198, 1204 (C.D.
Cal. 2004)).  A court, however, "may consider a writing
referenced in a complaint but not explicitly incorporated
therein if the complaint relies on the document and its
authenticity is unquestioned."  *Id.* (quoting *Parrino v. FHP,
Inc.,* 146 F.3d 699,706 (9th Cir. 1998), *superseded by statute on
other grounds as stated in Abrego v. Dow Chem. Co.,* 443 F.3d 676
(9th Cir. 2006)).

7 - OPINION AND ORDER

## DISCUSSION

Defendants contend this Court lacks subject-matter jurisdiction to decide this case because Plaintiff either lacks constitutional standing under the United States Constitution or statutory standing under RICO to assert its claims.  Defendants also contend Plaintiff fails to allege facts that state a plausible RICO claim even if the Court has jurisdiction.

**I.   Plaintiff has alleged facts that establish it has constitutional standing.**

Defendants contend Plaintiff cannot show a "personal interest" in this lawsuit, and, therefore, Plaintiff lacks standing under the United States Constitution.  To support its position Defendants' only argument is that "Plaintiff cannot show . . . it has a 'personal interest' in this lawsuit because Plaintiff has already represented to another court under penalty of perjury that another entity is the real party in interest." Defs.' Mot. to Dismiss (#9) at 7.  Specifically, Defendants point out that Plaintiff has represented in a related state-court case that Maysara Winery, the current lessee of Plaintiff's property, "is the one most immediately threatened by defendants' anticipated development of a marijuana farm operation."  Decl. of Allison C. Bizzano (#10) at 2.

In response Plaintiff contends it has standing based on the allegation that it owns the Momtazi property adjacent to the

Wagner property; that it operated a commercial vineyard on the
property until August 1, 2018; and that it has sustained
"injuries in fact" caused by Defendants' illegal conduct.

### A.   Standards

As noted, the "irreducible constitutional minimum" of
standing consists of three elements:  The plaintiff must have
(1) suffered an injury in fact (2) that is fairly traceable to
the challenged conduct of the defendant and (3) that is likely
to be redressed by a favorable judicial decision.  *Spokeo*, 136
S. Ct. at 1547.  See also *Lujan*, 504 U.S. at 560.  To establish
an injury in fact a plaintiff must show he suffered "an invasion
of a legally protected interest" that is "concrete and
particularized" and "actual or imminent, not conjectural or
hypothetical."  *Id.* at 1548 (quoting *Lujan*, 540 U.S. at 560).

For an injury to be "particularized," it "must affect
the plaintiff in a personal and individual way."  *Id.*
Particularization is necessary to establish injury in fact, but
the injury in fact must also be "concrete."  *Id.*  A "concrete"
injury must be "*de facto*"; that is, it must actually exist.  *Id.*

### B.   Analysis

As noted, Plaintiff states it owns the Momtazi
property adjacent to Defendants' property.  Plaintiff alleges
the value of its property has been diminished, it has been
unable to market its grapes, a reservoir on its property was

damaged, a calf was killed, and another cow damaged as a direct and proximate result of Defendants' activities to grow marijuana on their property.  Plaintiff also alleges an order for grapes was cancelled as a result of the customer's concern that the grapes were contaminated by the marijuana smell, which would adversely affect the wine made from the grapes.  Plaintiff further alleges it has been unable to sell grapes grown on the Momtazi property adjacent to Defendants' property because of buyers' concerns about contamination.  Plaintiff alleges this impact on the marketability of its grapes has diminished the value of its property, including rental fees charged for the property.  In addition, Plaintiff alleges the terracing on Defendants' property has caused dirt to flow downhill into the reservoir on Plaintiff's property and has been damaging fish and wildlife.

On this record the Court concludes Plaintiff has alleged injuries in fact that are concrete, particularized, and actual.  These allegations are sufficient to establish Plaintiff's constitutional standing, and, therefore, the Court has subject-matter jurisdiction over this case.  Accordingly, the Court denies Defendants' Motion to Dismiss pursuant to Federal Rule 12(b)(1) for lack of subject-matter jurisdiction.

10 - OPINION AND ORDER

## II.  Plaintiff has alleged facts that establish its statutory standing under RICO.

Defendant contends Plaintiff has not established it has statutory standing under RICO.

### A.    Standards

RICO allows "[a]ny person injured in his business or property by reason of a violation of" RICO to bring a civil suit for damages.  18 U.S.C. § 1964(c).  To show standing under RICO a plaintiff must allege (1) he suffered "harm to a specific business or property interest" and (2) the injury was "a proximate result of the alleged racketeering activity."  *Newcal*, 513 F.3d at 1055.  A plaintiff asserting injury to property must allege (1) the injury is proprietary as opposed to "personal" or "emotional" and (2) the proprietary injury resulted in "concrete financial loss."  *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008).  Whether an interest is proprietary is "typically determined by reference to state law."  *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005).

### B.    Analysis

Defendants contend Plaintiff has not alleged a concrete financial loss to a cognizable business or property interest or that such alleged injuries were proximately caused by Defendants' violation of RICO.

### 1.   Concrete Financial Loss

Plaintiff alleges it suffered financial loss as a result of lost sales of grapes, decreased marketability of its grapes, reduced rental income for its property, and lost or diminished value of two cows.  Defendants, however, contend none of these injuries are "concrete" under the Ninth Circuit's standard for recovery under RICO.

As noted, the Ninth Circuit in *Canyon County* held an alleged injury must be a concrete financial loss to a recognized property interest.  519 F.3d at 975.  The court found the county's expenditures in providing public services did not qualify as injury to property and that the county did not have a property interest in the services it provided to enforce the law and to promote public welfare.  *Id.*  Similarly, in *Imagineering, Inc. v. Kiewit Pacific Co.*, another case relied on by Defendants, the Ninth Circuit held there was not any proof of concrete loss under RICO when the plaintiffs did not receive the subcontracts to which they were entitled.  976 F.2d 1303, 1310 (9th Cir. 1992).  Neither of these cases, however, is factually on point with the case now before this Court.

In this District the court has held in two recent cases that mere allegations of diminished use or enjoyment of property or the costs of increased security measures as a result of a marijuana-grow operation on adjacent property do not

constitute injury to property.  *See, e.g., Ainsworth v. Owenby,*

326 F. Supp. 3d 1111 (D. Or. 2018); *Shoultz v. Derrick*, 369 F.

Supp. 3d 1120 (D. Or. 2019).  Each of these cases turned on

whether an allegation of diminished market value was sufficient

to constitute injury.  In *Ainsworth* the court determined even

though a reduction in the fair market value of land is an injury

to property, a RICO claimant must also show proof of concrete

financial loss rather than mere injury to a valuable, intangible

property interest.  326 F. Supp. 3d at 1124 (citing *Chase v.*

*Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1087 (9th Cir. 2002)).

The court noted a plaintiff's alleged financial loss cannot be

"purely speculative."  *Id.* (citation omitted).  The court held

the plaintiff had not alleged "specific prior attempts to

monetize a property interest and must plausibly allege at least

a present intent or desire to do so"; *i.e.,* the bare allegation

of diminished value without more was insufficient.  *Id.* at 1126.

        Similarly, in *Shoultz* the court held a RICO plaintiff

must allege in good faith that she attempted or currently

desired to convert her property interest into a pecuniary form,

and the plaintiff failed to do so.  369 F. Supp. 3d at 1128.

Again, the mere allegation of diminished market value was

insufficient.

        Here Defendants contend Plaintiff has not suffered a

concrete financial loss because Plaintiff "fails to offer even

13 - OPINION AND ORDER

an estimate of the fair market value of its real and personal

property, let alone any sources or methodologies for determining

the value(s)."  Defs.' Mot. (#9) at 9.  Defendants' reliance on

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751

F.3d 990 (9th Cir. 2014), to support their proposition, however,

is misplaced.  In *Eclectic* the plaintiffs alleged a RICO claim

based on the defendants' alleged fraudulent representation about

the value of the properties that the plaintiffs bought from the

defendants.  The plaintiffs alleged the properties sold to them

for $30 million were, in fact, only worth $11.1 million and that

the defendants spent $8.1 million on rent to maintain the

fraudulent price scheme until the properties were sold.  The

defendants challenged the sufficiency of the plaintiffs'

allegations.  The Ninth Circuit noted the predicate act for the

plaintiffs' RICO claim was alleged to be mail and wire fraud,

which required the pleading of sufficient facts to establish a

specific intent to defraud.  The court held the allegations in

the plaintiff's complaint did not state sufficient "factual

specificity" to infer reasonably that the defendants' conduct

was fraudulent.  751 F.3d at 998.

In this case Plaintiff has not alleged any "fraudulent

scheme" by Defendants that requires the "factual specificity" as

in *Eclectic*.  Plaintiff merely alleges a decrease in rental

income and a decrease in the marketability of grapes grown on

the property as a result of Defendants' marijuana operation.
Plaintiff also alleges at least one customer cancelled its order
as a result of concerns over the quality of grapes grown on the
property adjacent to Defendants' property.  Thus, Plaintiff's
losses arise from injury to property and are not based merely on
Plaintiff's use and enjoyment of its property.  Although
Plaintiff does not allege specific amounts of loss, the amounts
would be calculable in a pecuniary form based on evidence that
would be discoverable.

On this record the Court concludes Plaintiff's
allegations establish "injury to a property interest" that
constitutes a "concrete financial loss" sufficient for standing
under RICO.

**2.   Direct or Proximate Cause**

Plaintiff must also plausibly allege any compensable
property injury was proximately caused by Defendants'
racketeering activity.  18 U.S.C. § 1964(c).  Defendants contend
Plaintiff has failed to allege any of its injuries, including
the alleged cancellation of an order for wine grapes based on
the customer's subjective beliefs or the loss of Plaintiff's
cattle, were directly caused by Defendants' violations of RICO.

"When a court evaluates a RICO claim for proximate
causation, the central question it must ask is whether the
alleged violation led directly to the plaintiff's injuries."

15 – OPINION AND ORDER

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).  A

plaintiff, however, need not plead he is a victim of the

defendant's underlying crime.  *See Bridge v. Phoenix Bond &*

*Indem. Co.*, 553 U.S. 649, 649-50 (2008).

The Ninth Circuit has noted three factors are relevant

to determine whether a plaintiff has shown proximate cause:

> (1) whether there are more direct victims of the
> alleged wrongful conduct who can be counted on to
> vindicate the law as private attorneys general;
> (2) whether it will be difficult to ascertain the
> amount of the plaintiff's damages attributable to
> defendant's wrongful conduct; and (3) whether the
> courts will have to adopt complicated rules
> apportioning damages to obviate the risk of
> multiple recoveries.

*Newcal Indus.*, 513 F.3d at 1055.  These factors are

"nonexhaustive" (*Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163,

1169 (9th Cir. 2002)) and no single factor is dispositive

(*Canyon Cty.*, 519 F.3d at 983).  The controlling inquiry remains

whether an injury is the "direct" or "indirect" result of the

defendant's conduct.  *See id.* at 982 (analyzing "whether the

alleged violation led directly to the plaintiff's injuries").

Here, as noted, Plaintiff alleges it has been unable

to sell grapes grown on its property because of Defendants'

marijuana-grow operation adjacent to Plaintiff's property.  As

an example, one customer cancelled its order for grapes over a

concern that the smell from the marijuana on Defendants'

adjacent property would contaminate the grapes and affect the

16 - OPINION AND ORDER

taste of the wine made from those grapes.  The customer's

concerns, whether valid or invalid, arose directly from the

proximity of Defendants' marijuana-grow operation.

On this record the Court concludes Plaintiff has

alleged a direct link between its injuries and Defendants'

alleged violations of RICO, and, therefore, Plaintiff has

sufficiently alleged proximate cause for standing under RICO.

Accordingly, the Court denies Defendants' Motion to Dismiss for

lack of standing under Federal Rule 12(b)(6) based on this

reason.

## III. Plaintiff has alleged facts that state a plausible claim for a RICO violation.

Defendants contend Plaintiff fails to allege facts that

plausibly state a claim for relief under RICO.  Defendants

contend Plaintiff fails to allege facts that tend to show

Defendants are conducting or participating in an association-in-

fact enterprise of racketeering activity.

### A.   Standards

Section 1962 prohibits "any person . . . associated

with any enterprise . . . to conduct or participate, directly or

indirectly, in the conduct of such enterprise's affairs through

a pattern of racketeering activity."  To show a violation of

RICO pursuant to § 1962 a plaintiff must allege "(1) conduct

(2) of an enterprise (3) through a pattern (4) of racketeering

17 – OPINION AND ORDER

activity."  *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479,
496 (1985).  *See also Newcal Indus.*, 513 F.3d at 1055.

   **B.    Analysis**

      The Court finds the reasoning in the *Ainsworth* case,
which was also a marijuana-grow case, persuasive on the issue of
whether Plaintiff has a plausible claim under Rico.  The
*Ainsworth* court relied on *Safe Streets Alliance v. Hickenlooper*
in which the Tenth Circuit "methodically walked through the
Supreme Court's various formulations of the 'indirect injury'
limitation and easily concluded that the plaintiffs had
plausibly alleged a direct link between the defendants'
marijuana operation and the claimed reductions in property
value."  *Ainsworth*, 326 F. Supp. 3d at 1127 (citing *Safe Streets
Alliance v. Hickenlooper*, 859 F.3d 865, 890-91 (10th Cir.
2017)).

> The court explained that the landowners were
> suing to "recover for injuries to their own land,
> not harms to third parties," and that "no
> intermediary [had broken] the causal chain . . .
> between the enterprise's foul emissions" and the
> plaintiffs' claimed property injuries.  In
> addition, it reasoned that the declines in
> property value were "caused by the Marijuana
> Growers' criminal cultivation of marijuana
> *itself*" and that the defendants' enterprise was
> the "direct source of all the alleged injuries to
> the [plaintiffs'] land."  "[I]t is sufficient,"
> the court concluded, that the plaintiffs' reduced
> property values were the "direct by[-]product[ ]
> of the location and manner in which the Marijuana
> Growers [were] conducting their operations."

18 – OPINION AND ORDER

*Ainsworth*, 326 F. Supp. 3d at 1127.  The *Ainsworth* court

concluded the plaintiffs had plausibly alleged a direct link

between the defendants' marijuana-grow operation and the

plaintiffs' alleged injuries.

> Defendants point to no persons more directly
> injured by their alleged racketeering activities.
> If Plaintiffs cannot sue to vindicate the federal
> drug laws and recover for any compensable
> injuries, it is difficult to imagine a person who
> could.  In addition, there is no reason to assume
> that ascertaining the existence and amount of
> Plaintiffs' damages attributable to Defendants'
> racketeering activity will be too difficult.
> Plaintiffs allege facts detailing how and why
> Defendants' activities are causing a present drop
> in the fair market value of their properties, and
> "[i]t is inappropriate at this stage to
> substitute speculation for the complaint's
> allegations of causation."  If, as alleged,
> Defendants' activities are producing putrid
> odors, constant noise, excessive traffic, and
> reputational harms, a decline in the fair market
> value of Plaintiffs' land "is at least plausible
> enough to survive a motion to dismiss, whatever
> difficulty might arise in establishing how much
> lower" the values have become.

*Id.* at 1128 (citations omitted).  The Court finds the same

reasoning applies to Plaintiff's factual allegations in this

case:  "The presence of the Marijuana Operation on the Wagner

Property and the effects of its operation on the Momtazi

Property have directly and materially diminished the Momtazi

Property's fair market value," the marketability of grapes grown

on the Momtazi Property has declined as a direct result of the

Marijuana Operation's to the Momtazi Property," and "the rental

income that Plaintiff receives from renting the Momtazi Property

is materially less that it would be without the presence of the

Marijuana Operation on the Wagner Property."  Compl. (#1) at

¶ 21.

On this record the Court concludes Plaintiff has

stated "a claim for relief [against Defendants] that is

plausible on its face" under RICO, and, therefore, the Court

denies Defendants' Motion to Dismiss pursuant to Federal

Rule 12(b)(6) based on this reason.


## CONCLUSION

For these reasons, the Court **DENIES** Defendants' Motion (#9)

to Dismiss.

IT IS SO ORDERED.

DATED this 27th day of August, 2019.


/s/ Anna J. Brown

_____

ANNA J. BROWN
United States Senior District Judge


20 - OPINION AND ORDER